**Betty KUTSCHBACH, et al., Plaintiffs,**

v.

**Colonel Warren DAVIES, et al., Defendants.**

No. C2–93–1032.

United States District Court, S.D. Ohio, Eastern Division.

March 31, 1995.

Southeastern Ohio Legal Services, for plaintiffs.

Ohio Attorney General, for defendants.

### OPINION and ORDER

BECKWITH, District Judge.

Plaintiff Betty Kutschbach challenges certain recently enacted provisions of the Ohio Revised Code ("O.R.C.") on grounds that they are unconstitutional on their face and as applied. Plaintiff seeks both equitable and monetary relief. She names as defendants Colonel Warren Davies[1], the executive head of the Ohio State Highway Patrol, and Sergeant Harold Thompson of the Ohio State Highway Patrol. This matter is before the Court on three motions: (1) Plaintiff's motion for class certification, (2) Plaintiff's motion for partial summary judgment, and (3) Defendants' motion to dismiss or, in the alternative, for summary judgment.

### Background

On October 8, 1993, Plaintiff's husband drove her 1981 Oldsmobile automobile without Plaintiff's knowledge. He was arrested for driving without a license, and Plaintiff's automobile and license plates were seized, pursuant to provisions of Ohio law that were effective September 1, 1993. Ohio Revised Code § 4507.38(B)(1) requires an arresting officer to seize an automobile and license plates involved in the commission of one of a number of offenses, including driving without a license. Plaintiff challenges the notice and hearing provisions of O.R.C. § 4507.38 on due process grounds, claiming that an owner who has not authorized use of an automobile by an arrestee does not receive meaningful and timely notice of the seizure of the automobile or a timely hearing to regain possession of the automobile and license plates. She also asserts that the state law provision is void for vagueness and permits unreasonable seizures in violation of the Fourth Amendment of the United States Constitution.

1. Colonel Warren Davies was substituted as a defendant in this action for his predecessor in

### The Motion for Class Certification

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff asks the Court to certify a class defined as follows:

> vehicle owners whose vehicles and/or license plates have been or will be seized, pursuant to O.R.C. § 4507.38, while their vehicles are being driven by third persons, or will be retained after such a seizure.

▮ Rule 23(a) sets forth four requirements for the certification of a class. The proposed class representative must establish that each of those four requirements is satisfied with respect to the putative class. *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576 (S.D.Ohio 1993). Within the framework of Rule 23, the Court has broad discretion in determining whether an action is maintainable as a class action. *Kentucky Educators Public Affairs Council v. Kentucky Registry of Election Finance*, 677 F.2d 1125 (6th Cir.1982); *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58 (S.D.Ohio 1991). The requirements are as follows:

(1) the members of the class must be so numerous that joinder of all members is impracticable (the "numerosity requirement");

(2) questions of law or fact must be common to the entire class (the "commonality requirement");

(3) the claims or defenses of the named representative must be typical of the claims or defenses of the class (the "typicality requirement"); and

(4) the named representative must fairly and adequately represent the interests of the class as a whole (the "adequacy of representation requirement").

▮ If the proposed class representative establishes that each of the four requirements of Rule 23(a) is satisfied, she must also demonstrate that the class is an appropriate one for certification under one of the three

office, original defendant Colonel Thomas Rice.

subsections of Rule 23(b). *Senter, supra; Mayo, supra.* Plaintiff urges the Court to certify the proposed class under Rule 23(b)(2), which requires, in addition to the four requirements of Rule 23(a), a showing that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

In essence, the class proposed by Plaintiff consists of all persons whose automobiles are involved, while being driven by third parties, in offenses resulting in seizure or detainment of the automobiles, the license plates, or both. The Court concludes that Plaintiff has established that the numerosity, commonality, and typicality requirements of Rule 23(a) are satisfied with respect to the putative class and that a class may be certified pursuant to Rule 23(b)(2).

### 1. *The Numerosity Requirement*

■ To satisfy Rule 23(a)(1), Plaintiff must establish that "the class is so numerous that joinder of all members is impracticable." The numerosity requirement does not impose an absolute numerical limitation. *General Telephone Co. v. EEOC,* 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Rather, the Court must examine the facts of the case and determine whether Plaintiff will suffer distinct litigational hardship or inconvenience if joinder is required. *Boggs,* 141 F.R.D. at 63.

■ In this case, Plaintiff offers evidence that shows that the number of members in the putative class likely extends into the hundreds. Moreover, the putative class members are geographically scattered across the state of Ohio. Finally, the financial disincentives to initiating a lawsuit such as this one create a significant hardship for prospective plaintiffs and warrant the conclusion that the questioned statutes would go unchallenged were a class not certified. Those reasons, among others, lead the Court to the conclusion that the numerosity requirement of Rule 23(a)(1) is satisfied.

### 2. *The Commonality Requirement*

■ To satisfy Rule 23(a)(2), Plaintiff must establish that "there are questions of law or fact common to the class." The commonality requirement is satisfied "as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation." *Day v. NLO, Inc.,* 144 F.R.D. 330, 333 (S.D.Ohio 1992). The questions of law and fact raised by Plaintiff in the Complaint are identical or very similar to those raised by the members of the putative class whose automobiles are involved, *without their knowledge or permission,* in offenses resulting in seizure pursuant to O.R.C. § 4507.38. Plaintiff mounts a challenge to § 4507.38 on the ground that the owner whose automobile is involved in an offense for which seizure is mandated is deprived of timely and meaningful notice and a hearing to regain possession. The proposed class also includes those persons whose automobiles are involved in offenses while being driven by third persons with the knowledge or permission of the owner. Accordingly, as defined by Plaintiff, the proposed class includes two groups of persons. The Court does not conclude, however, that the proposed class does not satisfy the commonality requirement. Because the challenged provisions of Ohio law do not distinguish between the two groups based upon the knowledge of the vehicle owner, the Court will not exercise its discretion to narrow the class. The class will include all persons whose vehicles and/or license plates have been or will be seized while their vehicles were or will be driven by third parties with or without the owners' knowledge or permission, or have been or will be retained after such a seizure, pursuant to O.R.C. § 4507.38.

### 3. *The Typicality Requirement*

■ To satisfy the typicality requirement of Rule 23(a)(3), Plaintiff must establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." In determining whether the typicality requirement has been satisfied, the Court must focus on the type of injury suffered by class members and the varying in-

terests of individuals in the potential class. *Senter*, 532 F.2d at 525; *Boggs*, 141 F.R.D. at 64. The typicality requirement, like the commonality requirement, serves to ensure that the claims of the class members are so interrelated that the interests of absent class members will be protected. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982); *Boggs*, 141 F.R.D. at 64.

■ As discussed above, the circumstances under which Plaintiff was temporarily deprived of the use of her automobile are generally applicable to any non-driving owner whose automobile is detained pursuant to O.R.C. § 4507.38. The Court has previously observed that Plaintiff's situation differs from that of an owner whose vehicle is driven with his or her knowledge or permission. Those owners may raise the same challenges to the statute, however, as Plaintiff raises, because the statute does not distinguish between the two groups. In any event, those class members' claims are not adverse to Plaintiff's. Accordingly, the Court concludes that the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. *The Adequacy of Representation Requirement*

■ Finally, to satisfy the requirements of Rule 23(a)(4), Plaintiff must establish that "the representative parties will fairly and adequately protect the interests of the class." In assessing the adequacy of representation, the Court must consider whether Plaintiff shares sufficient common interests with class members and whether she will vigorously prosecute the class' interests through qualified counsel. *Senter*, 532 F.2d at 524–25; *Mayo*, 148 F.R.D. at 581; *Boggs* 141 F.R.D. at 66. In assessing the vigor of representation, the Court may consider the resources of the representative and her counsel and their ability to investigate claims and to contact other class members. *Boggs*, 141 F.R.D. at 66.

■ In this case, Plaintiff has named herself as the sole class representative. As explained above, Plaintiff shares sufficiently common interests with the class to ensure that absent class members' interests will be

fairly represented. Furthermore, Plaintiff has secured competent counsel with adequate resources to vigorously prosecute the class' interests. Accordingly, the Court concludes that the representative party will fairly and adequately protect the interests of the class.

■ Defendants contend that Plaintiff is not an adequate representative of the class because her claim for injunctive relief is moot. Indeed, Defendants argue that the mootness of Plaintiff's claim for injunctive relief requires the dismissal of this action. Defendants' arguments for dismissal are addressed below. As to the class certification question, the Court concludes that the proposed class should be certified in spite of the mootness of the named representative's claim for injunctive relief.

The United States Supreme Court has held that, in some situations, mootness of the named representative's claim does not render a class action moot. *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975). Indeed, the Court recognized that in some situations, some or all of the named plaintiff's claims could become moot, as in the present case, prior to class certification. "In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review." *Id.* at 402, n. 11, 95 S.Ct. at 559, n. 11. In *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court found the likely mootness of the named representatives' claims not to be a bar to maintenance of the class action. There, the Court observed that, in some cases, no potential plaintiff's claims will ever survive long enough for the certification of class yet that "the constant existence of a class of persons suffering the deprivation is certain." *Id.* at 110–11, n. 11, 95 S.Ct. at 861, n. 11.

The Court concludes that the present case falls precisely into that category of cases in which the claims "are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representa-

tive's individual interest expires." *United States Parole Commission v. Geraghty,* 445 U.S. 388, 399, 100 S.Ct. 1202, 1210, 63 L.Ed.2d 479 (1980). The *Gerstein* Court, concluded as follows with respect to the impact of the mootness of the proposed representative's claims:

> The purpose of the "personal stake" requirement is to assure that the case is in a form capable of judicial resolution. The imperatives of a dispute capable of judicial resolution are sharply presented issues in a concrete factual setting and self-interested parties vigorously advocating opposing positions. We conclude that these elements can exist with respect to the class certification issue notwithstanding the fact that the named plaintiff's claim on the merits has expired. The question whether class certification is appropriate remains as a concrete, sharply presented issue. In *Sosna v. Iowa* it was recognized that a named plaintiff whose claim on the merits expires after class certification may still adequately represent the class. Implicit in that decision was the determination that vigorous advocacy can be assured through means other than the traditional requirement of a "personal stake in the outcome."

The situations in which class certification may be appropriate after the named representative's claims become moot are limited to certain narrowly drawn exceptions. The present case fits into the category of cases in which the named representative's claims are "capable of repetition, yet evading review." *See Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975). That doctrine excepts from mootness those situations in which two elements combine:

> (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.

*United States v. Detroit,* 720 F.2d 443, 449 (6th Cir.1983) (quoting *Weinstein, supra*).

In the present case, Plaintiff was deprived of the use of her automobile for 34 days. That time period appears to be typical of the duration of the alleged constitutional viola-

tion and is too short to permit a potential plaintiff to fully litigate, or, indeed, to certify a class to litigate, the arising claims. Furthermore, it is not inconceivable that Plaintiff will be subject to O.R.C. § 4507.38 again in the future. Accordingly, the Court concludes that Plaintiff Kutschbach's claims are capable of repetition, yet evading review. The Court concludes, therefore, that the mootness of Plaintiff's claim for injunctive relief does not preclude the certification of the proposed class and that the requirement or Rule 23(a)(4) is satisfied.

### 5. *Rule 23(b)(2)*

In addition to meeting the requirements of Rule 23(a), a proposed class must also satisfy at least one of the criteria set forth in Rule 23(b). *Cottrell v. Lopeman,* 119 F.R.D. 651, 657 (S.D.Ohio 1987). In the present case, Plaintiff moves for certification pursuant to Rule 23(b)(2). Rule 23(b)(2) provides for class certification when the class representative is seeking "final injunctive relief or corresponding declaratory relief...." "Rule 23(b)(2) is applicable when the court's equitable power is the primary form of relief sought, not when 'the appropriate final relief relates exclusively or predominately to money damages.'" *Cottrell,* 119 F.R.D. at 657 (quoting Fed.R.Civ.P. 23(b)(2), Advisory Committee Notes to 1966 Amendments).

In the present case, the relief requested by the proposed class is exclusively equitable. Plaintiff seeks a declaration that O.R.C. § 4507.38 is unconstitutional on its face and as it has been or will be applied to class members. Certification of a class seeking equitable relief is particularly appropriate in a case, such as the present one, in which the named plaintiff's claims have or will become moot as the litigation progresses. *Johnson v. Opelousas,* 658 F.2d 1065, 1070 (5th Cir.1981) (cited with approval in *Penland v. Warren County Jail,* 759 F.2d 524 (6th Cir.1985), and 797 F.2d 332 (6th Cir. 1986)).

The Court finds the present action to be well-suited to class certification pursuant to Rule 23(b)(2). Accordingly, Plaintiff's motion for class certification is hereby **GRANTED.**

*Plaintiff's Motion for Partial Summary Judgment*

Plaintiff seeks summary judgment, on behalf of the class she represents, on the claim for equitable relief. Particularly, Plaintiff seeks a declaration that O.R.C. § 4507.38 is unconstitutional on its face and as applied to members of the class. Plaintiff asserts two challenges to the contested statute pursuant to the Due Process Clause of the Fourteenth Amendment: (1) she asserts that the statute does not provide meaningful, effective, and timely notice and opportunity to be heard to class members; and (2) she asserts that the statute is void for vagueness. Plaintiff also challenges the statute on grounds that it permits unreasonable seizures of vehicles and/or license plates in violation of the Fourth Amendment.

1. *The Statute*

Section 4507.38(b)(1) of the Ohio Revised Code provides, in pertinent part, as follows:

> If a person is arrested for a violation of division (B)(1) or (D)(2) of section 4507.02 of the Revised Code, a substantially equivalent municipal ordinance, or section 4507.33 of the Revised Code, the arresting officer ... shall seize the vehicle that the person was operating at the time of the alleged offense or that was involved in the alleged offense and its identification license plates. Except as otherwise provided in this division, the officer shall seize the vehicle and license plates under this division regardless of whether the vehicle is registered in the name of the person who was operating it or in the name of another person.... At the time of the seizure of the vehicle, the law enforcement officer who made the arrest shall give the arrested person written notice that the vehicle and its identification license plates have been seized; ... and that, if the arrested person is not the vehicle owner, the arrested person immediately should inform the vehicle owner that the vehicle and its license plates have been seized and that he may be able to obtain their return or release at the initial appearance....

Regarding notice to the vehicle owner, if not the arrested person, O.R.C. § 4507.38(B)(2) provides, in pertinent part, as follows:

> [T]he court shall promptly determine whether the arrested person is the vehicle owner and, if it determines that the arrested person is not the vehicle owner, promptly shall send or deliver written notice of the seizure to the vehicle owner. The written notice ... shall specify the date, time, and place of the arrested person's initial appearance....

In subsection (C)(1), § 4507.38 provides that "[t]he initial appearance shall be held within five days after the date of the person's arrest that resulted in the seizure of the vehicle."

Subsection (C)(2)(a) of § 4507.38 provides, in pertinent part, as follows, with regards to the release of the vehicle and/or license plates to an owner who is not the arrested person:

> The vehicle owner or a person acting on his behalf may file a motion requesting the court to order that the vehicle and its identification license plates be returned or released to the movant. Except as provided in this division or division (C)(2)(b) of this section, if such a motion is filed, the court, at the conclusion of the initial appearance and in its discretion, may issue an order requiring that the vehicle and its identification license plates be returned or released to the movant. If the arrested person is not the vehicle owner and the vehicle owner or a person acting on his behalf is not at the arrested person's initial appearance [and the arrested person does not plead guilty or no contest or the charges against the arrested person are not dismissed] ..., and if the court believes that the vehicle owner was not provided adequate notice of the initial appearance, the court, in its discretion, may allow the vehicle owner or a person acting on his behalf to file a motion ... requesting the court to order that the vehicle and its identification license plates be returned or released to the movant. Upon the filing of such a motion, the court, in its discretion, may issue an order requiring that the vehi-

cle and its identification license plates be returned or released to the movant.... [T]he order shall indicate that the vehicle owner or a person acting on his behalf shall bring the vehicle and its identification license plates to the court on the day on which the charges against the arrested person are to be resolved and that, if the arrested person is convicted of or pleads guilty to [the charges] ..., the court ... will issue an order for the immobilization of the vehicle and the impoundment of its license plates....

In the event that the arrested person pleads guilty at the initial appearance or pleads no contest and is later convicted of the charges, subsection (C)(2)(b) of § 4507.38 provides, in pertinent part, as follows:

[T]he court shall impose sentence upon the arrested person as provided by law or ordinance; the court, except as provided in this division and subject to section 4503.235 of the Revised Code, shall order the immobilization of the vehicle he was operating at the time of, or that was involved in, the offense and the impoundment of its license plates.... If the arrested person is not the vehicle owner and the vehicle owner or a person acting on his behalf is not present at the arrested person's initial appearance and if the court believes that the vehicle owner was not provided adequate notice of the initial appearance, the court, in its discretion, may refrain for a reasonable period of time from ordering the immobilization of the vehicle and the impoundment of its identification license plates or the criminal forfeiture to the state of the vehicle so that the vehicle owner or a person acting on his behalf may appear before the court to present evidence as to why the court should not order the immobilization of the vehicle and the impoundment of its license plates or the criminal forfeiture to the state of the vehicle....

Section 4503.235 of the Ohio Revised Code is entitled "Protection of rights of innocent vehicle owners" and provides, in pertinent part, as follows:

(B) ... [A] vehicle shall not be immobilized and its identification license plates shall not be impounded ..., a vehicle shall not be criminally forfeited to the state ..., and no order requiring any immobilization and impoundment, or forfeiture, shall be issued ... if all of the following apply:

(1) The person who was convicted of or pleaded guilty to a violation ... that would be the basis of the order of immobilization and impoundment, or forfeiture, ... is not the vehicle owner relative to the vehicle that was used in the offense or violation is question.

(2) The vehicle owner, prior to the time of the issuance of the order of immobilization and impoundment, or forfeiture, files a motion with the court requesting that the order not be issued because the vehicle owner was innocent of any wrongdoing relative to the offense or violation in question.

(3) Any of the following applies:

\* \* \* \* \* \*

(b) [T]he prosecutor in the case fails to establish to the court, at trial or subsequent to the filing of the motion and by a preponderance of the evidence, one or more of the following:

(i) That the vehicle owner knew or should have known after a reasonable inquiry that the vehicle was used or involved or likely to be used or involved in the offense or violation;

(ii) That the vehicle owner or his agent expressly or impliedly consented to the use or involvement of the vehicle in the offense or violation.

### 2. *Summary Judgment*

■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8

L.Ed.2d 176 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.*

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 472, 82 S.Ct. 486, 490, 7 L.Ed.2d 458 (1962). "[T]he issue of material fact required by Rule 56(c) ... to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 323, 106 S.Ct. at 2552; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. *Id.; Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.*

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Id.* Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### 3. *Due Process*

Plaintiff raises two due process challenges to the procedures established by O.R.C. § 4507.38 as they pertain to members of the class. Her first challenge is based upon the notice and hearing requirement of due process. *See Fuentes v. Shevin,* 407 U.S. 67, 81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972).

Specifically, she contends (1) that the statute does not afford vehicle owners who are not the arrested persons meaningful notice and an opportunity to be heard and (2) that, even if a postdeprivation hearing would satisfy due process, the statute does not provide an immediate and meaningful postdeprivation remedy. Plaintiff's second due process challenge to the statute is based upon the void for vagueness doctrine. Plaintiff contends that the statute provides no standards for the remedy of a court order releasing or returning the vehicle to the owner and leaves the decision whether, and under what circumstances, to release the vehicle to the discretion of the state trial judge. *See Goldberg v. Kelly*, 397 U.S. 254, 268–70, 90 S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1970).

The United States Supreme Court recently addressed the requirements of due process in the context of deprivations of property in *United States v. James Daniel Good Real Property*, —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). There, the Court held that "the seizure of real property . . . is not one of those extraordinary instances that justify the postponement of notice and hearing." *Id.* at ——, 114 S.Ct. at 505. The Court concluded that, absent exigent circumstances, the seizure of real property "requires the Government to afford notice and a meaningful opportunity to be heard before [seizure]." *Id.*

The Supreme Court in *Good Real Property* distinguished the seizure of real property from the seizure of personal property:

Whether *ex parte* seizures of forfeitable property satisfy the Due Process Clause is a question we last confronted in *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 [94 S.Ct. 2080, 40 L.Ed.2d 452] (1974), which held that the Government could seize a yacht subject to civil forfeiture without affording prior notice or hearing. Central to our analysis in *Calero–Toledo* was the fact that a yacht was the "sort [of property] that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given." *Id.*, at 679 [94 S.Ct., at 2090]. The ease with which an owner could frustrate the Government's interests in the

forfeitable property created a " 'special need for very prompt action' " that justified the postponement of notice and hearing until after the seizure. *Id.*, at 678 [94 S.Ct., at 2089] (quoting *Fuentes*, 407 U.S., at 91 [92 S.Ct., at 1999] ).

While the Court distinguished between forfeitures of real and of personal property, it observed that the same general due process principles apply to all deprivations of property. *Id.* at ——, 114 S.Ct. at 500. The Court noted that "prior notice and a hearing is central to the Constitution's command of due process." *Id.* The Court further noted that exceptions to predeprivation notice and hearing are tolerated only in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* at ——, 114 S.Ct. at 501 (internal quotations omitted). The Court observed that in order to determine whether an exception justifies a delay "requires an examination of the competing interests at stake, along with the promptness and adequacy of later proceedings." *Id.*

◼ The Supreme Court was guided by the three-part inquiry set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The *Mathews* analysis requires consideration of the private interest affected by the official action, the risk that the ensuing deprivation may be erroneous, the probable value of additional safeguards, and the governmental interest. *Id.* at 335, 96 S.Ct. at 903. The governmental interest consideration includes a consideration of the burden that would be imposed upon the government by additional procedural requirements. *Id.*

◼ In *Fuentes*, 407 U.S. at 70–71, 92 S.Ct. at 1989, the Supreme Court recognized that the owner's interest in kitchen appliances and household goods was sufficient to warrant a predeprivation hearing. The United States Court of Appeals for the District of Columbia Circuit has held that an owner's interest in a "junk" automobile is sufficiently significant to trigger the same protection. *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C.Cir.1991) (applying the Fifth Amendment's Due Process Clause because

the District of Columbia is a political entity created by the federal government but noting that the procedural due process components of the Fifth and the Fourteenth Amendments are the same). The United States Courts of Appeals have concluded, however, that due process does not require predeprivation notice and hearing in all situations in which a vehicle is seized. *See, e.g., United States v. One 1971 BMW*, 652 F.2d 817, 820–21 (9th Cir.1981). Rather, the determination of what process is due requires consideration of the other factors set forth in *Mathews v. Eldridge, supra. See One 1971 BMW*, 652 F.2d at 820.

The second inquiry under the *Mathews* analysis is a consideration of the risk of erroneous deprivation through the procedures used and the probable value of additional safeguards. *Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903. In *Calero–Toledo,* the Supreme Court reiterated that "it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent." 416 U.S. at 689, 94 S.Ct. at 2094. The Court further observed that

> [T]he same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for in that circumstance it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive.

*Id.*

 In the present case, the risk of erroneous deprivation of class members' property is extraordinarily high. The legislature obviously recognized the risk, for it included in the statute the "innocent owner" provision contained in O.R.C. § 4503.235. Pursuant to that provision, a vehicle is not subject to immobilization or forfeiture if the government cannot establish (i) that the vehicle owner knew or should have known that the vehicle would be driven by the arrested person or (ii) that the vehicle owner or his agent consented to the use or involvement of the

vehicle in the offense for which the driver was arrested.

The Defendants in the present case have offered no rebuttal to Plaintiff's allegation that in her case the deprivation resulting from the seizure of her vehicle was erroneous. The Defendants have also failed to offer any persuasive argument that the seizure of the Plaintiff's automobile was anomalous or that the deprivation caused by the application of O.R.C. § 4507.38 to class members' vehicles is *not* erroneous in most situations.

The legislature presumably intended O.R.C. § 4503.235 to prevent erroneous deprivations. As Plaintiff Kutschbach's case well illustrates, however, O.R.C. § 4503.235 fails as a prophylactic to erroneous seizures, when it is applied in conjunction with O.R.C. § 4507.38. While § 4503.235 provides that the vehicles of "innocent vehicle owners" are not subject to impoundment or forfeiture, it fails to prevent their impoundment because it does not provide a procedural alternative to the one set forth in § 4507.38. Indeed, an "innocent" owner may not assert the defense provided by § 4503.235 until the trial of the arrested person on the charges resulting from the incident leading to the seizure of the "innocent" owner's vehicle. § 4507.38(C)(2)(b). Under Ohio law, the government is not required to conduct the trial until at least thirty days after the arrest. O.R.C. § 2945.71. Accordingly, O.R.C. § 4507.38 permits the government to deprive the "innocent" owner of her vehicle for a *period of at least 30 days before affording her an opportunity to avail herself of the protection provided by § 4503.235.*

The challenged statute does present the possibility that an "innocent" owner's vehicle will be returned to her prior to the trial of the arrested person. The statute provides, at O.R.C. § 4507.38(C)(2)(a), that the vehicle owner or a person acting on her behalf may appear at the arrested person's initial appearance and move for the return or release of the vehicle. Subsection (C)(1) requires that the initial appearance be held within five days of the arrest, and subsection (B)(2) requires the court to send or deliver notice to the vehicle owner of the date and time of the

initial appearance. Upon the vehicle owner's motion, however, the court is not required to order the return of the vehicle to the "innocent" owner. Indeed, O.R.C. § 4507.38(C)(2)(a) provides that the court "in its discretion, may issue an order requiring that the vehicle and its identification license plates be returned or released to the movant." In sum, the statute provides no assurance that an "innocent" owner will regain possession of her vehicle prior to the arrested person's trial. Erroneous deprivation of the class members' property is virtually guaranteed, therefore, for a period of up to five days and is likely for a period of at least thirty days.[2]

The second inquiry of *Mathews v. Eldridge* includes a consideration of the probable value of additional safeguards. 424 U.S. at 335, 96 S.Ct. at 903. The Court observes that, in their response to Plaintiff's motion for summary judgment, the Defendants have not argued that additional procedural safeguards would have no value. Indeed, the Court concludes that an amendment to the challenged statute that would permit class members to assert the protection of O.R.C. § 4503.235 at the time of the arrest of the third party driver would be of enormous value to class members. Because the Defendants do not contend that such an additional safeguards would be valueless, however, the Court merely concludes that the second *Mathews v. Eldridge* inquiry weighs in favor of the plaintiff class.

The final requirement of *Mathews v. Eldridge* is that the Court consider the governmental interest in the existing statutory procedure, including the administrative burden that additional procedural requirements would impose. *Id.* at 335, 96 S.Ct. at 903. The Defendants in their two sentence response to Plaintiff's due process arguments, do not identify the governmental interest in the existing statutory procedures. The Court notes, however, that the interest is similar to that identified in *James Daniel Good Real Property:* "The governmental interest we consider here is not some general

interest in forfeiting property but the specific interest in seizing the property before the forfeiture hearing." —— U.S. at ——, 114 S.Ct. at 502. The question here is whether *ex parte* seizure and impoundment of class members' vehicles is justified by a pressing need for prompt action. *See Fuentes,* 407 U.S. at 91, 92 S.Ct. at 2000.

In *Goichman v. Aspen,* 859 F.2d 1466 (10th Cir.1988), the Court of Appeals recognized an exception to the predeprivation hearing requirement when the seizure of an automobile, in the form of towing and impoundment, is a legitimate exercise of police power. *Id.* at 1468. The exception identified in *Goichman* recognizes that law enforcement officials must occasionally take custody of a vehicle to preserve public safety. *See also Stypmann v. San Francisco,* 557 F.2d 1338, 1342–43 (9th Cir.1977). In cases such as *Goichman* and *Stypmann,* however, the Courts of Appeals have held that due process requires a "prompt" hearing "at which the person seizing the property must at least make a showing of probable cause." *Stypmann,* 557 F.2d at 1344. In defining what constitutes a prompt hearing, the *Stypmann* court held that "[a] five-day delay in justifying detention of a private vehicle is too long." *Id.* Indeed, the court concluded that "[d]ays, even hours, of unnecessary delay may impose onerous burdens upon a person deprived of his vehicle." *Id.* The court did not identify an acceptable period of delay but noted that the Supreme Court has held that, when predeprivation notice and hearing are impracticable or not required, the notice and hearing provided must be "meaningful." *Id. See, e.g., Greene v. Lindsey,* 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974); *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971).

The third *Mathews v. Eldridge* inquiry also considers the burden that additional procedural requirements would impose upon the government. The Defendants have not identified any significant burden that would re-

---

2. In Plaintiff's case, the deprivation lasted for 34 days before she was able to obtain a court order

releasing her vehicle to her.

sult from additional procedural requirements. Without attempting to legislate amendments to the challenged statute, the Court notes that, without imposing a significant burden upon the government, the statute could require that a vehicle owner be contacted immediately upon the arrest of a third party driver and the government promptly be required to show probable cause for the detention of the vehicle. Because Defendants do not argue that additional procedural requirements would be unduly burdensome, however, the Court perceives no benefit is addressing all of the potential procedural requirements that might be imposed to prevent erroneous deprivation or unconstitutional delays in the return of vehicles to class members. The Court merely concludes that the third inquiry of *Mathews v. Eldridge* weighs in favor of the plaintiff class.

Weighing the results of all of the inquiries under *Mathews v. Eldridge,* the Court concludes that the violation of class members' due process rights by O.R.C. § 4507.38 is manifest. The class members assert a property interest that is protected by the Due Process Clause of the Fourteenth Amendment. The procedures set forth in the statute virtually ensure the erroneous deprivation of class members' property. No governmental interest justifies a delay of several days before the government is required to establish probable cause for the detention of a class member's vehicle. Accordingly, Plaintiff's motion for summary judgment as to the class' claim for declaratory judgment is hereby **GRANTED.** The Court concludes that O.R.C. § 4507.38 is unconstitutional as applied to vehicle owners whose vehicles and/or license plates have been or will be seized while their vehicles are being driven by third persons. The Court further concludes that the statute may not be enforced as to those persons in conformity with the Due Process Clause of the Fourteenth Amendment. The Court does not comment upon the constitutionality of the statute as applied to vehicle owners whose vehicles and/or license plates have been or will be seized while the owners are driving the vehicles. The Court further concludes that a discussion of Plaintiff's claim that O.R.C. § 4507.38 is void for vagueness and violates the Fourth Amendment as applied to class members would be superfluous in light of the conclusions set forth in this Opinion and Order.

### Defendants' Motion to Dismiss or for Summary Judgment

Defendants move for the dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, of Plaintiff Kutschbach's claims on four grounds. The first three grounds relate to Plaintiff's claim for equitable relief on behalf of the class: (1) mootness, (2) failure to state a claim for relief under 42 U.S.C. § 1983, and (3) failure to state a claim for relief under the Due Process Clause. In the previous two sections of this Opinion and Order, the Court disposes of the Defendant's first three grounds for dismissal. Accordingly, the Defendants' motion is **DENIED** as to those three grounds. In this section of the Opinion and Order, the Court considers the Defendants' motion to dismiss on the fourth ground, qualified immunity, which pertains only to Plaintiff Kutschbach's claim for money damages on Plaintiff's constitutional claims.

Qualified immunity entitles its possessor to "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The Supreme Court clarified the objective test in *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984):

> *Harlow v. Fitzgerald* rejected the inquiry into state of mind in favor of a wholly objective standard.... Whether an official may prevail in his qualified immunity defense depends upon the "objective reasonableness of [his] conduct as measured by reference to clearly established law." No other "circumstances" are relevant to the issue of qualified immunity.

*Id.* at 191, 104 S.Ct. at 3017 (citations omitted).

■ On a dispositive motion, the Court must examine the currently applicable law and determine whether that law was clearly established when the alleged actions occurred. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. If the law was not clearly established, the defendant is entitled to qualified immunity. *Id.* Government officials, therefore, are shielded from civil damages liability when "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

In determining whether the law was clearly established at the time of the alleged action, the Supreme Court has advised that the fact that the plaintiff has asserted the violation of a broadly defined right is not determinative:

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless that very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 (citation omitted). The United States Court of Appeals for the Sixth Circuit has stated the law applicable to the defense of qualified immunity as follows:

> The question is whether any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.

*Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994) (quoting *Brandenburg v. Cureton,* 882 F.2d 211, 215 (6th Cir.1989)).

■ In the present case, the Court concludes that Defendants Davies and Thompson are immune from liability for damages for the violation of Plaintiff Kutschbach's due process rights. The case for qualified immunity is particularly strong in this instance for two reasons: (1) Defendants were acting in accordance with their responsibilities under an Ohio statute that had never been held unconstitutional by the Ohio Supreme Court or any federal court and (2) Defendants were justified by legitimate public safety objectives in taking custody of Plaintiff Kutschbach's vehicle when her husband was arrested for driving without a license.

■ As a general rule, a law enforcement official is entitled to qualified immunity for non-discretionary acts performed in conformity with state law or policy. *See Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (stating that immunity is given for "objectively reasonable reliance on existing law"). As the record indicates here, Defendants' acts were non-discretionary and in compliance with O.R.C. § 4507.38, a statute that had not been held unconstitutional by the Ohio Supreme Court or any federal court. As long as Defendants acted in conformity with state law, therefore, they should not be required to answer in damages for the ensuing violation of Plaintiff Kutschbach's due process rights.

Additionally, Defendants were unquestionably responsible for the seizure of Plaintiff's vehicle pursuant to O.R.C. § 4507.38. That seizure unquestionably began the course of conduct that resulted in the violation of Plaintiff's due process rights. Defendants, nevertheless, were not responsible for the enforcement of that portion of the contested statute that permitted the unconstitutional delay before Plaintiff was afforded the opportunity to regain possession of her vehicle. To permit Plaintiff to pursue her claim for damages against Defendants Davies and Thompson would be tantamount to holding that Defendants not only should have recognized the unconstitutionality of the statute but also should have taken upon themselves the task of amending the statute to include a meaningful notice and hearing provision. The doctrine of qualified immunity prevents such a holding. Accordingly, Defendants'

motion to dismiss Plaintiff Kutschbach's claim for damages is hereby **GRANTED.**

### Conclusion

For the foregoing reasons, Plaintiff's motion for class certification (Doc. 4) is hereby **GRANTED.**

Plaintiff's motion for summary judgment on the class' claim for equitable relief (Doc. 11) is hereby **GRANTED,** as set forth more fully herein. Section 4507.38 of the Ohio Revised Code is unconstitutional as applied to vehicle owners whose vehicles and/or license plates have been or will be seized while their vehicles are being driven by third persons. Section 4507.38 of the Ohio Revised Code may not be enforced as to those persons in conformity with the Due Process Clause of the Fourteenth Amendment.

Defendants' motion to dismiss or, in the alternative, for summary judgment (Doc. 7) is hereby **GRANTED,** in part, and **DENIED,** in part, as set forth more fully herein.

This case is **DISMISSED.**

**IT IS SO ORDERED.**