**UNITED STATES of America, Plaintiff,**

v.

**Daniel Jacob DAHAN, Defendant.**

**No. CV 02–5753 SVW (PJWx).**

United States District Court, C.D. California.

April 4, 2005.

James J. Waldorf, Kathryn E. Van Houten, Irsfeld Irsfeld & Younger, Glendale, CA, for Plaintiff.

Daniel B. Herbert, Manning and Marder Kass Ellrod Ramirez, Los Angeles, CA, for Defendant.

**AMENDED ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT SUA SPONTE.**

WILSON, District Judge.

## I. INTRODUCTION/FACTUAL & PROCEDURAL BACKGROUND

This case arises out of a dispute over whether a student attending Duke University on an NROTC scholarship who was denied a commission after graduating is required to reimburse the United States for the scholarship under the terms of his "NROTC Scholarship Service Agreement." Defendant was notified that he owed the United States reimbursement and failed to pay, alleging that the terms of the contract did not require him to reimburse the government, since he completed his educational requirements and did not decline to accept a commission.

### A. Factual Background

Defendant Daniel Jacob Dahan ("Dahan") attended Duke University from

1992–1996 under a Navy Reserve Officers' Training Corps ("NROTC") scholarship. The scholarship was awarded pursuant to the NROTC Scholarship Service Agreement, which provides that under certain circumstances, a recipient may be required to reimburse the United States for the scholarship funds.

Specifically, the terms of the contract read: "If I fail to complete the active duty specified in paragraph I.B.4 due to misconduct or due to circumstances surrounding an administrative separation, I will reimburse the United States for educational assistance provided to me in proportion to the amount of obligated service unserved." In turn, paragraph I.B.4 reads:

> If I do not complete the 4–year course of instruction, or if I complete the course but decline to accept a commission when offered, I may be ordered to active duty by the Secretary of the Navy to serve in an enlisted status for 4 years, or for such lesser period as the Secretary may prescribe.

Upon his graduation from Duke in May 1996, the Navy declined to offer Dahan a commission on the ground of "inaptitude/unsuitability." Subsequently, the Department of the Navy determined that Dahan was required to reimburse the United States for the amount of the scholarship plus interest and penalties. Upon being notified of this, Dahan refused to pay.

*B. Procedural Background*

The United States filed a complaint on the promissory note on July 23, 2002, which was served on Dahan on May 18, 2004, and the case was assigned to this Court on May 24, 2004. The United States alleges that Dahan owes $93,596.27, including $59,514.44 of principal plus interest and penalties. The United States filed a Motion for Summary Judgment, seeking to recover the $93,596.27, pre-judgment interest on the principal after August 2,

2004, attorneys' fees in the amount of $2,000 and additional fees in the event of appeal of $2,000, plus post-judgment interest and court costs.

After considering the parties' briefs on the United States' Motion for Summary Judgment, the Court determined that the United States was not being adequately represented by its counsel and that both parties had neglected to fully analyze the issues. As such, the Court ordered the United States Attorney to be present at the August 30, 2004 hearing, and ordered the United States Attorney and Dahan to submit further briefing regarding the United States' Motion for Summary Judgment.

The Court has received and fully considered the supplemental briefs from both sides. Since the United States' interpretation of the "NROTC Scholarship Service Agreement," which would require Defendant to reimburse the United States for the costs of his education, is incorrect as a matter of law, the Court DENIES the United States' Motion for Summary Judgment and GRANTS Summary Judgment in favor of Defendant sua sponte.

## II. DISCUSSION

*A. Summary Judgment Standard*

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir.1982).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden may be met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 323–34, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Only genuine disputes—where the evidence is such that a reasonable jury could return a verdict for the nonmoving party— over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir.2001) (the nonmoving party must offer specific evidence from which a reasonable jury could return a verdict in its favor).

██ Even if a party fails to file a motion for summary judgment, if the party is entitled to judgment as a matter of law, the Court may enter summary judgment sua sponte, as long as the opposing party has had a "full and fair opportunity to ventilate the issues involved." *Gospel Missions of Am. v. City of Los Angeles,* 328 F.3d 548, 553 (9th Cir.2003).

*B. Standard of Review of the Secretary of the Navy's Interpretation of the Contract*

*1. Interpretation of Contracts in General*

██ Federal law governs the interpretation of contracts when the government is a party to the contract. *U.S. v. Seckinger,* 397 U.S. 203, 209–10, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). *See also Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210 (9th Cir.1999) (citing *O'Neill v. U.S.,* 50 F.3d 677, 682 (9th Cir. 1995)). In making this interpretation, the Court looks to "general principles for interpreting contracts." *Id.* (citing *Kennewick Irrigation Dist. v. U.S.,* 880 F.2d 1018, 1032 (9th Cir.1989)).

██ Determination of whether the provisions of a contract are "clear and unambiguous," and interpretation of provisions deemed "clear and unambiguous," are questions of law, allowing summary judgment. *See U.S. v. Sacramento Mun. Util. Dist.,* 652 F.2d 1341, 1344 (9th Cir.1981). However, if the Court determines that the contractual language is unclear, summary judgment is inappropriate, as "differing views of the intent of the parties will raise genuine issues of material fact." *Id.* (citing *Freeman v. Cont'l Gin Co.,* 381 F.2d 459, 465 (5th Cir.1967)). *See also Wards Co. v. Stamford Ridgeway Assocs.,* 761 F.2d 117, 120 (2d Cir.1985); *Geoscan, Inc. v. Geotrace Techs., Inc.,* 226 F.3d 387, 390 (5th Cir.2000).

██ " 'The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous.' " *Kennewick Irrigation Dist.,* 880 F.2d at 1032 (quoting *Int'l Union of Bricklayers & Allied Craftsman Local No. 20 v. Martin Jaska, Inc.,* 752 F.2d 1401, 1406 (9th Cir. 1985)). "A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Id.* (citing *Castaneda v. Dura–Vent Corp.,* 648 F.2d 612, 619 (9th Cir.1981)).

*2. Review of Administrative Agency Findings*

██ Under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, a

court "may only set aside agency actions, findings, and conclusions that are in violation of 5 U.S.C. § 706(2)." *Verplanck v. England,* 257 F.Supp.2d 182, 187 (D.D.C. 2003).[1] In this case, the relevant standard is whether the agency action, findings, and conclusions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "A decision is arbitrary and capricious if the agency 'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n,* 92 F.3d 940, 942 (9th Cir.1996) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

■ However, this "arbitrary and capricious" standard of review only applies to limit judicial review of questions of fact found by the agency, and questions of law are freely reviewable by the courts. *See, e.g., Nat'l Indus. Sand Ass'n v. Marshall,* 601 F.2d 689 (3d Cir.1979); *Dep't of Wildlife Conservation of State of Miss. v. Jantzen,* 621 F.Supp. 838 (S.D.Miss.1985); *Montana Power Co. v. EPA,* 429 F.Supp. 683 (D.Mont.1977). Thus, to the extent that the Court determines that the provi-

sions of the contract are "clear and unambiguous," the Court need not apply the "arbitrary and capricious" standard, since determination of whether the contractual language is "clear and unambiguous," and interpretation of provisions deemed "clear and unambiguous" are questions of law. *See U.S. v. Sacramento Mun. Util. Dist.,* 652 F.2d at 1344.

## C. Clear and Unambiguous Language of Contract

The United States alleges that under the plain language of the contract, it is entitled to reimbursement for the costs of Defendant's education. In turn, Defendant alleges that under the plain language of the contract, he is not required to reimburse the United States for his education. Defendant has the better of this argument.

The contract sets forth only two possible situations where Defendant might be required to reimburse the United States for his education expenses. Under the first, if Defendant "fail[s] to complete educational requirements identified in paragraphs I.B.1–2, or for reasons of misconduct [he is] disenrolled," he could be required to reimburse. This paragraph is not at issue, since it is not alleged that Defendant did not complete his education or engaged in misconduct.

The United States relies on paragraph II.A.2 to support its claim that Defendant is required to reimburse it for his edu-

---

1. The full text of 5 U.S.C. § 706(2) reads:
   The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be—
   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
   (B) contrary to constitutional right, power, privilege, or immunity;
   (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
   (D) without observance of procedure required by law;
   (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
   (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

cational expenses. Paragraph II.A.2 reads:

> If I fail to complete the active duty specified in paragraph I.B.4 due to misconduct or due to circumstances surrounding an administrative separation, I will reimburse the United States for educational assistance provided to me in proportion to the amount of obligated service unserved.

The United States alleges that the Navy's failure to grant Defendant a commission because of "inaptitude" amounts to failure to complete active duty "due to circumstances surrounding an administrative separation."

However, since the clause at issue refers to paragraph I.B.4, it is necessary to look at that paragraph to ascertain paragraph II.A.2's meaning. *See Shakey's Inc. v. Covalt*, 704 F.2d 426, 434 (9th Cir.1983) ("A written contract must be read as a whole and every part interpreted with reference to the whole"). Paragraph I.B.4 reads:

> If I do not complete the 4–year course of instruction, or if I complete the course but decline to accept a commission when offered, I may be ordered to active duty by the Secretary of the Navy to serve in an enlisted status for 4 years, or for such lesser period as the Secretary may prescribe. I understand this provision becomes binding on me upon entry into the second year of naval science courses, unless I entered the NROTC program from active duty. In this case my service obligation is governed by Title 10, *United States Code* 516.

Thus, the active duty referred to in paragraph I.B.4 is active duty imposed because of the student's failure to complete his education or failure to accept a commission when offered. It is undisputed that Defendant completed his education and was not offered a commission. Thus, the active duty referred to in paragraph I.B.4 did not apply to Defendant. Accordingly, he could not have failed to complete that active duty as specified in paragraph II.A.2, the paragraph the United States relies on in asserting that Defendant must reimburse the government for his education.

The United States' assertion that the language in paragraph II.A.2 regarding "circumstances surrounding an administrative separation" could arguably apply to the Navy's failure to grant Defendant a commission because of "inaptitude" divorces the contract language from its context. In order to trigger a reimbursement, the "circumstances surrounding an administrative separation" would have to have caused Defendant to fail to complete the active duty specified in paragraph I.B.4. Paragraph I.B.4 only applies if Defendant failed to complete his education or failed to accept a commission when offered, neither of which is alleged by the United States. This means that paragraph II.A.2 plainly does not apply to Defendant, and no reasonable interpretation of paragraph II.A.2 could require Defendant to reimburse the United States.

Although the United States would have the Court believe that the contract language is ambiguous, the United States cannot manufacture an ambiguity by disputing the meaning of otherwise unambiguous contract terms. *See Kennewick Irrigation Dist.*, 880 F.2d at 1032. There is only one reasonable interpretation of the contract terms in this case, so the contract is clear and unambiguous. *See Id.*

Since the Court has determined that the language of the contract is clear and unambiguous, interpretation of the contract is a question of law. *See Sacramento Mun. Util. Dist.*, 652 F.2d at 1344. This means that the Court is free to review the Secretary of the Navy's interpretation of the contract and is not required to give the

Secretary of the Navy's interpretation the deference required for agency findings of fact. *See Nat'l Indus. Sand Ass'n,* 601 F.2d 689.

Under the clear and unambiguous language of the contract, the United States is not entitled to reimbursement from Defendant as a matter of law. In addition, the United States has provided the Court with no evidence that any extrinsic evidence exists to compel an alternative interpretation or that extrinsic evidence would be admissible in this case. Thus, the United States' Motion for Summary Judgment is DENIED and Summary Judgment in favor of Defendant is GRANTED sua sponte.

### D. Statutory Requirements for Advanced Education Assistance Agreements

To bolster his argument that he should not be required to reimburse the United States for his educational expenses, Defendant relies on the statute governing advanced education assistance agreements, 10 U.S.C. § 2005(a). That statute reads, in relevant part:

(a) The Secretary concerned may require, as a condition to the Secretary providing advanced education assistance to any person, that such person enter into a written agreement with the Secretary concerned under the terms of which the person shall agree—

.  .  .  .  .

(3) that if such person, voluntarily or because of misconduct, fails to complete the period of active duty specified in the agreement, or fails to fulfill any term or condition prescribed under clause (4), such person will reimburse the United States in an amount that bears the same ratio to the total cost of advanced education provided such person as the unserved portion of active duty bears to

the total period of active duty such person agreed to serve; and

(4) to such other terms and conditions as the Secretary concerned may prescribe to protect the interests of the United States.

10 U.S.C. § 2005(a).

According to Defendant, the statute allows the government to require reimbursement of a military scholarship only if a student (1) *voluntarily* fails to complete active duty; (2) fails to complete active duty because of *misconduct;* or (3) fails to fulfill any other term or condition specified in the agreement. (Def. Opp. at 6). Thus, the statute allows the United States to establish other conditions under which reimbursement is required by contract.

The Court has no quarrel with Defendant's interpretation of the statute, which comports with the plain language of the statute. However, the disagreement between the parties is whether "any other term or condition specified in the agreement" requires Defendant to reimburse the United States for his educational expenses. The statute allows the parties to establish such terms and conditions by contract and gives no guidance regarding interpretation of such terms and conditions. In effect, since voluntary failure to complete active duty and misconduct are not at issue, in this case the statute simply directs the Court to look to the contract to see whether any terms or conditions require Defendant to reimburse the United States.

In the same way, the cases cited by Defendant in support of his argument that he was not required to reimburse the United States under the statute are unhelpful, because they are specific to the terms and conditions of the contracts between the United States and the students at issue, none of which are identical to the contract between the United States and Defendant.

*See U.S. v. Gears,* 835 F.Supp. 1093 (N.D.Ind.1993) (holding that the plaintiff's separation due to inaptitude did not constitute a voluntary separation or misconduct, so reimbursement was not appropriate); *U.S. v. McCrackin,* 736 F.Supp. 107 (D.S.C.1990) (holding that lying under oath amounted to misconduct requiring reimbursement); *U.S. v. Bush,* 247 F.Supp.2d 783 (M.D.N.C.2002) (holding that criminal conviction for vandalism amounted to misconduct requiring reimbursement); *Roetenberg v. Sec'y of Air Force,* 73 F.Supp.2d 631 (E.D.Va.1999) (holding that improper relationship with superior officer and lying about it under oath amounted to misconduct requiring reimbursement); *U.S. v. Stoeber,* 242 F.Supp.2d 1026 (D.Kan.2003) (holding that the unambiguous language of the contract requiring that the student reimburse the United States if he became unable to commence active duty required reimbursement where the student was discharged from service as medically disqualified).

Thus, the statute governing advanced education assistance agreements would allow the United States to require reimbursement in this case if it had inserted specific terms and conditions in Defendant's contract unambiguously requiring such reimbursement. However, since the clear and unambiguous language of the contract compels the conclusion that the United States did not require reimbursement from Defendant in this case, the United States' Motion for Summary Judgment is DENIED and Summary Judgment in favor of Defendant is GRANTED sua sponte.

## III. CONCLUSION

The clear and unambiguous language of the "NROTC Scholarship Service Agreement" governing Defendant's scholarship does not require Defendant to reimburse the United States for his educational expenses, since he completed his educational requirements and did not decline to accept a commission. Thus, this Court DENIES the United States' Motion for Summary Judgment [11] and GRANTS Summary Judgment in favor of Defendant sua sponte.

IT IS SO ORDERED.